IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLEN JOHNSON,

                    Plaintiff,              Case No. 10 C 6897

          v.

                                           Hon. Harry D. Leinenweber
PARTHA GHOSH, *et al.*,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Dr. Partha Ghosh's ("Ghosh") Motion to Dismiss Plaintiff's Complaint, and Defendant Marcus Hardy's ("Hardy") Motion for Summary Judgment. Because the Motions largely raise the same issues, the Court will rule on them jointly. For the reasons that follow, both are denied.

## I. BACKGROUND

Plaintiff Allen Johnson ("Johnson") is an inmate at Stateville Correctional Center who filed suit alleging violations of 42 U.S.C. § 1983 in connection with the treatment, or alleged lack of treatment, he received for a broken foot. Johnson's First Amended Complaint names Ghosh, the Medical Director at Stateville; Hardy, the prison's warden; and John Doe, an unnamed correctional officer. Johnson contends that on the morning of September 2, 2010, he injured his right foot and ankle while exercising at the prison. Defendant Doe, the correctional officer, allegedly refused to provide medical assistance, instead telling Johnson to "man up," and return to his

cell house.  Once there, Johnson contends, he suffered severe pain and vomiting from his injuries.  Other correctional officers requested medical assistance for Johnson from the prison's Health Care Unit, but they did not respond.  A half hour later, correctional officers contacted a nurse from the unit, who brought a wheelchair to Johnson's cell house.  Johnson was then admitted to the Health Care Unit, some two and a half hours after his injury occurred.

Once there, according to Johnson's Complaint, he had to wait more than four hours before being taken to Provena Saint Joseph Medical Center in Joliet ("St. Joseph").  During that time, his pain was so severe that he suffered tremors and vomiting.  Doctors at St. Joseph ordered X-rays, and informed Plaintiff that he had chipped bone fractures in his foot.  Doctors also told him that he might have further damage to his foot and ankle, but they would not be able to tell until the swelling decreased.  A half-cast was put on Johnson's lower right leg and foot, and he was told to return for a full cast and X-rays when the swelling subsided.

After returning to the prison, Johnson contends, he had to wait several hours before he was given a room in the Health Care Unit. Johnson stayed at the Health Care Unit for five days, until September 7, 2010, but contends he received no medical attention during that time.  His foot was not monitored, and although he was told to keep his leg elevated, no one provided Johnson with the means to do so. He contends he was forced to lie on a flat mattress and beg for pain medication.

Johnson maintains that on the morning of September 7, 2010, Ghosh ordered that he be discharged from the Health Care Unit, even though his injuries had not healed and even though Ghosh had not personally examined Johnson. Ghosh also ordered that the half cast be removed, and a nurse forced Johnson's swollen foot into an athletic shoe. Johnson then had to walk up four flights of stairs to his cell house on a broken, unhealed foot. When he returned to his cell house, Johnson was in such extreme pain that he suffered body tremors and vomiting.

That same day, September 7, 2010, Johnson filed an emergency grievance with Hardy requesting medical attention. Hardy summarily denied the grievance without personally observing Johnson's condition. Johnson maintains that he also sent Ghosh a note requesting medical care, but received no response.

Ghosh did order that Johnson be transferred to a lower gallery and a low bunk, but Johnson maintains that these orders were not carried out. Each day, he says, he was forced to climb four flights of stairs to his cell, which caused him to reinjure his foot several times. On September 12, 2010, Johnson filed a second emergency grievance, which was again denied by Hardy. On September 20, 2010, he filed a formal appeal to the prison's Administrative Review Board (the "ARB"), but that too was denied. Johnson alleges that on October 8, 2010, he was given an appointment with Ghosh, but after waiting more than three and a half hours, he was returned to his cell without receiving treatment.

Johnson contends that his injured foot has not healed properly because he did not receive the treatment suggested by the doctors at St. Joseph, including further X-rays and a cast to stabilize the bones. As such, Johnson alleges that Defendants were deliberately indifferent to his serious medical needs.

## II. <u>LEGAL STANDARDS</u>

Both Ghosh and Hardy contend that Johnson failed to exhaust his administrative remedies, and as such his suit should be dismissed. However, they use different vehicles to make this argument. Hardy has filed a Motion for Summary Judgment, while Ghosh seeks dismissal of the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Ghosh additionally argues that Johnson has failed to state a claim for deliberate indifference to his medical needs.

The parties dispute whether the issue of exhaustion is properly raised through a motion for summary judgment or a motion to dismiss, particularly where Ghosh relies on documents outside Johnson's Complaint. However, except for a printout of part of the Illinois Administrative Code (which merely states a portion of the relevant law governing prison grievances) all of the documents in question were attached to Johnson's original Complaint and concern his emergency grievances and appeal to the Administrative Review Board. Johnson refers to these documents in his Amended Complaint, so the Court may consider them in deciding Ghosh's Motion to Dismiss without converting it into a motion for summary judgment. *Leslie v. Doyle*, 868 F.Supp. 1039, 1041 (N.D. Ill. 1994).

In ruling on a motion under FED. R. CIV. P. 12(b)(6), the Court must accept as true all well-pled facts, and draw all inferences in favor of the non-moving party. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2011).  Where the issue of the sufficiency of a complaint hinges on an affirmative defense, a motion to dismiss may be granted where the face of the complaint spells out that defense. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In ruling on Hardy's Motion for Summary Judgment, the Court must determine whether the pleadings and materials of record show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  Any discrepancies in the record should be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In the context of failure to exhaust, the Court, and not a jury, must resolve all factual disputes and determine whether the plaintiff has met the exhaustion requirement. *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008).  The Court may hold a hearing on the exhaustion issue, or it may resolve the matter without a hearing if it can do so from the record. *Nesbitt v. Villanueva*, No. 09 C 6080, 2011 WL 737617, at *3 (N.D. Ill. Feb. 24, 2011).

As an initial matter, Hardy moves to strike certain Plaintiff's Local Rule 56.1 Statement of Additional Facts because Johnson cites to his Complaint as the source of those facts.  A party opposing summary judgment must not rest on his pleadings, but must respond with

evidence showing disputed facts.  *Liberty Lobby*, 477 U.S. at 248.
However, the Court notes that the facts are largely drawn from
Johnson's grievances, which are part of the record and are relied
upon by both sides.  To the extent Johnson's facts are supported by
the record, the Court will consider them in determining Hardy's
Motion for Summary Judgment.  As such, Hardy's Motion to Strike
Plaintiff's Statement of Facts is denied.

### III.  ANALYSIS

#### A.  Exhaustion of Administrative Remedies

Ultimately, there is no disagreement that Johnson filed two
emergency grievances seeking medical care.  The key question is the
same regardless of whether it is framed in the context of dismissal
or summary judgment:  Did Johnson's use of the emergency grievance
process amount to an exhaustion of his administrative remedies?

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)
requires exhaustion of all available administrative remedies before
a prisoner brings a Section 1983 lawsuit.  *Porter v. Nussle*, 534 U.S.
516, 524 (2002).  Exhaustion is an affirmative defense, and the
burden of proof is on the defendant.  *Dole v. Chandler*, 438 F.3d 804,
809 (7th Cir. 2006).  The defendant must prove that the
administrative remedies were "available" to the prisoner, and he
failed to exhaust them.  *Id.*

The Seventh Circuit strictly enforces this requirement, and if
a prisoner fails to properly use the prison's grievance process, he
may lose his right to sue.  *Id.*  The Illinois Department of

Corrections has established a grievance procedure that typically requires that a prisoner first attempt to resolve problems through his counselor. 20 Ill. Admin. Code § 504.810(a). If an offender is unable to resolve the complaint this way, he may file a written grievance. *Id.* The prison's grievance officer may then interview the inmate or witnesses and investigate the complaint. 20 Ill. Admin. Code § 504.830(c). The grievance officer then reports his or her findings to the Chief Administrative Officer (the warden), who is to render a decision to the inmate within two months after receipt of the grievance. 20 Ill. Admin. Code § 504.830(d).

However, the regulations also provide that an offender may request that a grievance be handled on an emergency basis by forwarding the grievance directly to the warden. 20 Ill. Admin. Code § 504.840. If the warden determines there is a substantial risk of imminent harm to the offender, the grievance will be handled on an emergency basis. 20 Ill. Admin. Code § 504.840(a).

The crux of the dispute here is Defendants' contention that after Plaintiff's emergency grievances were denied, he had an obligation to pursue the normal grievance process outlined above. This is not correct. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) ("There is nothing in the current regulatory text . . . that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."). Although Defendants argue that *Thornton* is distinguishable, the Seventh Circuit has subsequently reaffirmed the principle that an

inmate who files an emergency grievance "has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary." *Glick v. Walker*, 385 Fed. App'x. 579, 583 (7th Cir. 2010).

These principles control here. Hardy included an affidavit from Sarah Johnson of the Office of Inmate Issues for the Illinois Department of Corrections, stating that the ARB reused to review Johnson's grievances because he did not include forms that showed a response from the grievance officer or warden. This would have necessarily required Johnson to resubmit his grievances through the normal process, but Defendants present no evidence that anything in the Administrative Code required Johnson to do so. *See Walker v. Mahone*, No. 09-1128, 2010 WL 5071571, at *3 (C.D. Ill. Dec. 8, 2010) (denying summary judgment where Plaintiff submitted an emergency grievance but did not follow instructions to resubmit the grievance through the normal channels); *Ruiz v. Tillman*, No. 06 C 1975, 2009 WL 528680, at *5 (N.D. Ill. Feb. 25, 2009) (holding that inmate was not obligated to follow grievance procedures established by the prison, but those set forth in the Illinois Administrative Code).

Defendants express concern that if Johnson's case is allowed to go forward, it would allow inmates to bypass the normal grievance process merely by labeling an ordinary grievance as an "emergency" and submitting it directly to the warden. This would allow prisoners to circumvent the exhaustion requirement of the PLRA. But Defendants present no facts to show that Johnson was attempting to bypass the

exhaustion requirement. For the purposes of this motion, Ghosh accepts Plaintiff's allegations that he suffered a broken foot. Hardy likewise admits that Johnson injured his foot. Def. Hardy's Resp. to Pl.'s 56.1 Statement of Material Facts, at ¶ 2. In such a circumstance, where Johnson claimed a need for immediate medical attention, it was appropriate for him to use the emergency grievance process. *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1174 (7th Cir. 2010). For these reasons, Ghosh's Motion to Dismiss and Hardy's Motion for Summary Judgment on the ground of failure to exhaust are denied.

### B. Ghosh's Motion to Dismiss for Failure to State Claim of Deliberate Indifference

Alternatively, Defendant Ghosh moves to dismiss Johnson's complaint pursuant to FED. R. CIV. P. 12(b)(6) on the ground that it fails to state a claim for deliberate indifference. "[D]eliberate indifference to [the] serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference requires that the prisoner demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A serious medical condition is one that has been diagnosed by a doctor as requiring treatment or one that is so obvious a lay person would recognize the need for treatment. *Greeno*, 414 F.3d at 653. A claim of deliberate indifference also requires that the prisoner show that

the prison official knew of and disregarded a grave risk to the prisoner's health. *Id.* Medical decisions that involve questions of judgment, such as whether one course of treatment is preferable to another, are not actionable under the Eighth Amendment. *Snipes v. DeTella*, 95 F.3d 586, 590-91 (7th Cir. 1996).

Ghosh alleges this is such a case, where Plaintiff merely disagreed with the decisions made by the health care staff at the prison. He also points to an inconsistency between Plaintiff's complaint and his grievances in that Plaintiff admitted in the Sept. 12, 2010, grievance that Ghosh did take X-rays, but alleges in his complaint that he never received the X-rays recommended by the doctors at St. Joseph. Ghosh also points to a medical permit that shows that Ghosh ordered that Johnson be transferred to a low bunk and low gallery, as well as that he be given an ankle brace.

Clearly, Ghosh provided some care to Plaintiff, but this does not mean that his claim must fail. *Greeno*, 414 F.3d at 654. Here, Johnson has adequately alleged a sufficiently serious injury because he was diagnosed with a broken foot. Additionally, Johnson alleges that Ghosh ordered his cast to be prematurely removed without examining him, resulting in the swelling of his foot, extreme pain, and the failure of the foot to heal properly. He alleges that while in pain, he sent a note to Ghosh asking for treatment, but received no response. Johnson also alleges that the staff in the Health Care Unit failed to provide care recommended by the doctors at St. Joseph. These allegations are sufficient to state a claim that the treatment

he received was so inappropriate as to evidence intentional mistreatment. *Greeno*, 414 F.3d at 654; *see Johnson v. Hart*, No. 10 C 240, 2011 WL 1706117, at *3 (N.D. Ill. May 5, 2011) (noting that failure to treat chronic pain or refusal to provide care prescribed by doctor may amount to deliberate indifference).

## IV.  CONCLUSION

For the reasons stated herein, Defendant Ghosh's Motion to Dismiss is denied, as is Defendant Hardy's Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**    6/30/2011